Mara B. Levin (ML-1747)
David Feuerstein (DF-6926)
**HERRICK, FEINSTEIN LLP**
Two Park Avenue
New York, New York 10016
(212) 592-1400 (phone)
(212) 592-1500 (fax)
mlevin@herrick.com
dfeuerstein@herrick.com



UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

JOAN CHILD DANGERFIELD (individually and
derivatively on behalf of RODNEY
DANGERFIELD, INC.),

                    Plaintiff,

          -against-

ANTHONY ("BABE") BEVACQUA and
RODNEY DANGERFIELD, INC.,

                  Defendant.

             -and-

RODNEY DANGERFIELD, INC.,

           Nominal Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

Index No.

**COMPLAINT**

       Joan Child Dangerfield ("Plaintiff"), individually, and on behalf of Rodney Dangerfield, Inc. ("RDI" or the "Company"), by and through her attorneys, Herrick, Feinstein LLP, as and for her complaint in the above-captioned action, hereby alleges as follows:

## Introduction

1.      This case sets forth claims for breach of fiduciary duty, breach of contract and unjust enrichment arising out of Anthony "Babe" Bevacqua's improper conduct in causing the Company to make to certain payments to him.

2.      The most notable of these improper payments was one made by the Company to Mr. Bevacqua ("Defendant") in excess of $500,000.  While the Company's official books and records identify this payment as "a loan", there is no written loan agreement between the Company and Defendant.  Nor, upon information and belief, has Defendant repaid any principal of the "loan" or paid anything beyond a *de minimis* rate of interest on the loan's outstanding balance.   (The purported "loan" will hereinafter be referred to as the "Excessive Loan Payment").

3.      The lack of any formal loan agreement and Defendant's failure to repay anything beyond a minimal rate of interest suggest that Defendant received, in fact, excessive compensation that Defendant is not obligated repay.  By accepting these funds as compensation at a time when the Company's total assets and annual revenue were steadily decreasing, Defendant breached his fiduciary duty to the Company.

4.      Even if the Excessive Loan Payment to Defendant is considered to be "loan", Defendant is still in breach.  By failing to comply with Plaintiff's demand that he repay the Excessive Loan Payment to the Company, Defendant has breached the terms of the purported "loan agreement" between him and the Company which required Defendant to repay the monies upon demand.

5.      Aside from the Excessive Loan Payment, Defendant improperly caused the Company to pay him (either directly or indirectly) over (i) $260,000 in fiscal year 2004 (of

2

which $110,000 is excessive), and (ii) $195,000 in fiscal year 2005 (of which $45,000 is excessive). (These payments will collectively be referred to as the "Excessive Compensation Payments".)

6.    Accordingly, Plaintiff, on behalf of RDI, seeks repayment to the Company of the Excessive Loan Payment and the Excessive Compensation Payments that Defendant improperly misappropriated from the Company.   In the alternative (i) with respect to the Excessive Loan Payment, if not improper at the time it was taken, Plaintiff seeks a declaratory judgment that the $500,000 plus payment to Defendant was, in fact, a loan that Defendant is obligated to repay with interest at a competitive rate prospectively and retroactively within a reasonable amount of time, and (ii) with respect to the Excessive Compensation Payments, an order requiring Defendant to pay Plaintiff her proportionate share of distributions made by the Company to Defendant.

## Venue and Jurisdiction

7.    This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1332, in that this is a civil action between citizens of different States where the amount in controversy exceeds $75,000.

8.    Venue lies with this Court pursuant to 28 U.S.C. § 1391(a) because Defendant resides in this judicial district.

9.    This case should be assigned and tried before Magistrate Judge Andrew J. Peck (i) pursuant to 28 U.S.C. §§ 636(c)(1) and 1391(a) because the parties consented to have the Court conduct any trial arising out of the settlement agreement entered into by the parties on January 5, 2007 (the "Settlement Agreement"), and (ii) Plaintiff's claims arise out of the Settlement

3

Agreement in that they concern "compensation to [Defendant], whether for salary, bonus, dividends or any other basis that exceeds $150,000 per year."

## Parties

10.     Plaintiff Joan Child Dangerfield, is a resident of the State of California, residing in Los Angeles, California 90069.   At all times relevant hereto, either Plaintiff or Rodney Dangerfield, her deceased husband from whom she inherited the shares in the Company, were shareholders of RDI.

11.     Upon information and belief, Defendant Anthony "Babe" Bevacqua, is a resident of the State of New York.   At all times relevant times hereto, Defendant was a majority shareholder, officer and/or director of RDI.

12.     Defendant Rodney Dangerfield, Inc. is a New York Corporation with its principal place of business located at 1118 First Avenue, New York, New York 10021.

13.     Nominal Defendant Rodney Dangerfield, Inc. is a New York Corporation with its principal place of business located at 1118 First Avenue, New York, New York 10021.

14.     For all the reasons set forth in the Complaint, demand on the Company would be futile because (i) Defendant, individually or with immediate family members, controls the Company and constitute the Company's officer(s), director(s) and majority shareholder(s); and (ii) Defendant's misconduct is at the center of this dispute.

## The Facts

A.     **Background - The January 5, 2007 Settlement Agreement**

15.     On or about August 2, 2006, Plaintiff sued Defendant and the Company in the Supreme Court of the State of New York for New York County seeking, *inter alia*, a declaratory

4

judgment confirming that she is twenty-five percent shareholder of RDI and an order allowing her to inspect books and records of the Company.

16.     The parties ultimately agreed -- after Defendant and the Company removed the action to United States District Court for the Southern District of New York -- to submit the case to mediation.

17.     Following almost two full days of mediation, the parties entered into the Settlement Agreement.  Under the terms of the Settlement Agreement, Defendant acknowledged that Plaintiff was a 25% shareholder of RDI and, as such, was entitled "on a one-time basis . . . to review the corporation's books and records of the last three and a half years," and to "challenge any salary, bonus, dividends or any other basis that exceeds $150,000 per year."

18.     In other words, the Settlement Agreement permitted Plaintiff to review the books and records of RDI "from June 2003 through December 31, 2006," to challenge any compensation that "[Defendant] and/or collectively Darrin Bevacqua" received from the Company above $150,000.

19.     Notably, the Settlement Agreement does not limit Plaintiff's right to (i) assert claims for excessive compensation provided to Defendant and/or his son, Darrin Bevacqua, prior to June 2003, or (ii) assert new claims arising out of Defendant's subsequent misconduct that occurred after January 5, 2007 (*i.e.* the date of the Settlement Agreement).

20.     From May through July of 2007, Plaintiff, through her agent, attempted to review the books and records of RDI, much of which was no longer available or, despite due demand, not produced.  Defendant refused to permit Plaintiff to copy any documents without first entering into a Confidentiality Agreement (which Plaintiff refused to do).

HF 3779949v.1 #12118/0001 09/04/2007 01:56 PM

**B.    The Worsening Financial Condition of RDI**

21.    According to the Company's books and records, the Company's total assets have steadily diminished each year from 2003 through 2006.

22.    Specifically, the Company's total assets went from roughly $700,000 as of May 31, 2003, to roughly $600,000 as of May 31, 2004, and then to roughly $500,000 as of May 31, 2005.

23.    Of course, the Company's "total assets" included the account receivable created by the Excessive Loan Payment. Thus, in actuality, the Company's total assets were worth roughly (i) $200,000 as of May 31, 2003, (i) $100,000 as of May 31, 2004, and (iii) essentially zero as of May 31, 2005.

24.    The Company's retained earnings were similarly decreasing between fiscal years 2003 through 2005. For example, as of May 31, 2003, the Company's retained earnings were almost $650,000. As of May 31, 2005, however, the Company's retained earnings were less than $500,000.

**C.    The Excessive Loan Payment**

25.    Notwithstanding the Company's obviously deteriorating financial condition, Defendant either caused the Company to pay him $514,487 or a portion thereof, or retained that amount (or a portion thereof) as excessive compensation.

26.    Such a payment, whether characterized as a "loan" or compensation, is plainly excessive. Indeed, in fiscal year 2003, for example, the Excessive Loan Payment to Defendant represented roughly 74% of the Company's total assets.

HF 3779949v.1 #12118/0001 09/04/2007 01:56 PM

27.     Upon information and belief, Defendant has not repaid any principal on the balance of the Excessive Loan Payment, even though by definition, a "loan" requires that "the same or its equivalent" be returned.

28.     Moreover, while Defendant claims that the Excessive Loan Payment was in fact a "loan", no written loan agreement between Defendant and the Company exists.  Nevertheless, Defendant has asserted that there is a "loan agreement" between Defendant and the Company, that provides that:  (i) Company funds were to be made available to Defendant in increments, rather than in one lump sum, (ii) Defendant is obligated to pay "interest on the outstanding amount" of the loan at the "short term federal rate," each May, and (iii) Defendant is not required to pay any fixed payments of principal back to the Company.

29.     Given these vague and uncertain terms, Plaintiff, through her counsel, requested additional information concerning the purported loan agreement.

30.     Specifically, Plaintiff's counsel demanded additional information concerning Defendant's obligation to repay the Excessive Loan Payment, such as (i) whether Defendant ever repaid any amounts of principal, (ii) whether Defendant intended to repay any amounts of principal, and (iii) when, if ever, the Excessive Loan Payment was due in full.

31.     Defendant, however, refused to provide Plaintiff or her counsel with any additional information concerning the terms of the alleged "loan agreement".

32.     On June 4, 2007, Plaintiff, through her counsel, demanded that Defendant repay the Excessive Loan Payment with interest pursuant to an "arm's length, written agreement". Once again, Defendant refused this request.

7

**The Excessive Compensation Payments**

33.    Upon information and belief, Defendant, since the Company's inception, repeatedly made distributions to himself without accounting to the Company's other shareholders (*i.e.*, Mr. or Mrs. Dangerfield) or paying the other shareholders their pro rata share.

34.    In fiscal year 2004, Defendant caused the Company to pay him roughly $40,000 in "compensation".

35.    In addition, Defendant caused the Company to issue "distributions" to him in fiscal year 2004 in the amount of roughly $220,000.   Thus, in fiscal year 2004, Defendant received over $260,000 from the Company.

36.    Given that the Company's total assets (not including the Excessive Loan Payment) were worth less than $100,000 in fiscal year, Defendant's decision to pay himself over $260,000 (of which $110,000 is challengeable under the terms of the Settlement Agreement) was plainly improper.

37.    The $260,000 payment is even more troublesome when viewed in context.  At or around the time Defendant withdrew these monies from the Company, Rodney Dangerfield (plaintiff's late husband) was in declining health and he lapsed into a coma in August 2004 and passed away on October 5, 2004.

38.    In other words, Defendant started stripping the Company of its assets the moment Mr. Dangerfield -- for whom the Company is named after and whose fame and good will built Company -- became unable to monitor Defendant's conduct.

39.    In fiscal year 2005, Defendant caused the Company to pay him over $187,000 in "compensation" and caused the Company to issue distributions to him in the amount of roughly $10,000.

HF 3779949v.1 #12118/0001 09/04/2007 01:56 PM

40.    Defendant's decision to cause the Company to pay him roughly $197,000 (of which roughly $47,000 is challengeable under the terms of the Settlement Agreement), when the Company's total assets (not including the Excessive Loan Payment) were worth virtually nothing was clearly improper.

### AS AND FOR A FIRST CAUSE OF ACTION
### (Breach of Fiduciary Duty - Corporate Waste)

41.    Plaintiff repeats and realleges the allegations contained in Paragraphs 1 through 40 of this Complaint as if fully set forth herein.

42.    At all relevant times herein, Defendant was the majority shareholder, an officer and/or director of RDI and owed RDI fiduciary duties of care and loyalty.

43.    Notwithstanding his fiduciary duties of care and loyalty, and the fact that the Company's assets were diminishing each successive year, Defendant improperly caused the Company to "loan" him over $500,000 or a portion thereof, or improperly retained that amount (or a portion thereof).

44.    While Defendant claims that the Excessive Loan Payment is a "loan," Defendant has not, upon information and belief, repaid any of the funds he allegedly "borrowed". Nor, for that matter, has Defendant entered into any written loan agreement with the Company or paid anything more than *de minimis* interest on the Excessive Loan Payment's outstanding balance.

45.    The lack of any legitimate evidence that the Excessive Loan Payment to Defendant was a "loan" suggests that Defendant received, in fact, excessive compensation that Defendant (absent his fiduciary duties) is not obligated to repay.

HF 3779949v.1 #12118/0001 09/04/2007 01:56 PM

46.     In addition to the Excessive Loan Payment (which itself was improper), Defendant caused the Company to pay him over $450,000 in fiscal years 2004 and 2005 ($150,000 of which, under the terms of the Settlement Agreement, is challengeable).

47.     By forcing the Company pay him roughly $1,000,000 at a time when the sum of Company's total assets (not including the Excessive Loan Payment) were worth only a fraction of that amount, Defendant breached his fiduciary duty to the Company.

48.     Indeed, when viewed in comparison to the Company's total assets, Defendant's Excessive Loan Payment and Excessive Compensation Payments plainly constitute corporate waste.

49.     As a result of Defendant's breach of fiduciary duty, the Company has been damaged in an amount to be determined at trial but in no event less than $650,000 plus interest.

## AS AND FOR A SECOND CAUSE OF ACTION
### (Breach of Contract)

50.     Plaintiff repeats and realleges the allegations contained in Paragraphs 1 through 49 of the Complaint as if fully set forth herein.

51.     Defendant has claimed that the Excessive Loan Payment constitutes a "loan".

52.     The "loan agreement", however, has no maturity date.  Thus, the Excessive Loan Payment is payable on demand.

53.     On June 4, 2007, Plaintiff demanded that Defendant repay the Excessive Loan Payment with interest.

54.     Defendant refused Plaintiff's demand.  In so doing, Defendant breached the "loan agreement".

HF 3779949v.1 #12118/0001 09/04/2007 01:56 PM

55.    As a result of Defendant's breach, the Company has been damaged in an amount to be determined at trial but in no event less than $514,487 plus interest.

## AS AND FOR A THIRD CAUSE OF ACTION
### (Unjust Enrichment)

56.    Plaintiff repeats and realleges the allegations contained in Paragraphs 1 through 55 of the Complaint as if fully set forth herein.

57.    Defendant has claimed that the Excessive Loan Payment constitutes a "loan".

58.    The "loan agreement", however, has no maturity date and is therefore unenforceable.

59.    In addition, Defendant has taken in excess of $450,000 in compensation for the fiscal years 2004 and 2005 ($150,000 of which, under the terms of the Settlement Agreement, is challengeable).

60.    Plainly, Defendant has benefited from the receipt of roughly $1,000,000 from the Company since Defendant does not have to repay the monies and only pays, if anything, a *de minimis* amount of interest on the Excessive Loan Payment.

61.    The Company, by contrast, has suffered as a result of the Excessive Loan Payment and Excessive Compensation Payments since the Company's total assets and retained earnings have steadily diminished and there is no certainty of repayment on the Excessive Loan Payment.

62.    As a result of Defendant's conduct, the Company has been damaged in an amount to be determined at trial but in no event less than $600,000 plus interest.

## AS AND FOR A FOURTH CAUSE OF ACTION
### (Declaratory Judgment 28 U.S.C. §§ 2201-2202)

11

63.    Plaintiff repeats and realleges the allegations contained in Paragraphs 1 through 62 of this Complaint as if fully stated herein.

64.    Defendant has claimed that the Excessive Loan Payment was a "loan".

65.    Defendant, however, has also claimed that the terms of the purported "loan agreement" do not require him to repay the Excessive Loan Payment's principal.  Similarly, Defendant has given no indication that he ever intends to repay the Excessive Loan Payment or that the Excessive Loan Payment must be repaid at any time in the future.

66.    There is an actual controversy existing between Plaintiff and Defendant with regard to Defendant's obligations under the "loan agreement", and in particular, whether Defendant is obligated to repay the purported "loan".

67.    Accordingly, Plaintiff seeks an order pursuant to 28 U.S.C. §§ 2201-2202 declaring that (i) the payment to Defendant is, in fact, a loan, and (ii) Defendant is obligated to repay the loan with interest within a reasonable amount of time.

## AS AND FOR A FIFTH CAUSE OF ACTION
## (VIOLATION OF BCL § 501)

68.    Plaintiff repeats and realleges the allegations contained in Paragraphs 1 through 67 of this Complaint as if fully stated herein.

69.    At all times relevant hereto, Plaintiff or Rodney Dangerfield, her deceased husband from whom she inherited the shares in the Company, owned 25% of RDI.

70.    To the extent the Excessive Compensation Payments are deemed appropriate by the Court, Plaintiff is entitled to 25% of any "distributions" that were paid by the Company to Defendant pursuant to BCL § 501.

12

71.     The Company declared and paid distributions to Plaintiff in (i) fiscal year 2004, in the amount of $220,000, and (ii) fiscal year 2005, in the amount of $10,000.

72.     Thus, Plaintiff is entitled to 25% of (i) the distribution that the Company paid to Defendant in fiscal year 2004, and (ii) the distribution that the Company paid Defendant in fiscal year 2005.

Wherefore, Plaintiff demands judgment against Defendants as follows:

(a)     on Plaintiff's First Cause of Action, monetary damages that are payable to the Company in an amount to be determined at trial but in no event less than $650,000 plus interest;

(b)     on Plaintiff's Second Cause of Action, monetary damages that are payable to the Company in an amount to be determined at trial but in no event less than $514,487 plus interest;

(c)     on Plaintiff's Third Cause of Action, monetary damages that are payable to the Company in an amount to be determined at trial but in no event less than $600,000 plus interest;

(d)     on Plaintiff's Fourth Cause of Action, a judicial declaration that the $500,000 plus payment constitutes a "loan" that Defendant is obligated to repay with interest within a reasonable amount of time;

(e)     on Plaintiff's Fifth Cause of Action, an order requiring the Company to pay Plaintiff a distribution in an amount to be determined at trial but in no event less than $40,000 plus interest; and

13

(f)    Any other and further relief as the Court deem proper, including but not limited to Plaintiff's attorneys fees and costs associated with bringing this action.

Dated: New York, New York
       September 4, 2007

HERRICK, FEINSTEIN LLP

By: _____
         Mara B. Levin (ML-1747)
         David Feuerstein (DF-6926)
Attorneys for Plaintiff,
  Joan Child Dangerfield
Two Park Avenue
New York, New York  10016
(212) 592-1400

HF 3779949v.1 #12118/0001 09/04/2007 01:56 PM